Kenneth B. Black (5588)
Email: *ken.black@stoel.com*
Timothy K. Conde (10118)
Email: *timothy.conde@stoel.com*
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
Telephone:  (801) 328-3131
Facsimile:  (801) 578-6999

Jerome A. Swindell (*pro hac vice* application forthcoming)
Email: *jswindel@its.jnj.com*
Assistant General Counsel
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, NJ 08933
Telephone: (732) 524-3965
Facsimile:  (732) 524-5823

Jonathan F. Cohn (*pro hac vice* application forthcoming)
Email: *jfcohn@sidley.com*
Ken Glazer (*pro hac vice* application forthcoming)
Email: *kglazer@sidley.com*
Kwaku A. Akowuah (*pro hac vice* application forthcoming)
Email: *kakowuah@sidley.com*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 736-8110
Facsimile:  (202) 736-8711

Joel M. Mitnick (*pro hac vice* application forthcoming)
Email: *jmitnick@sidley.com*
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5871
Facsimile:  (212) 839-5599

Attorneys for
Johnson & Johnson Vision Care, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| JOHNSON & JOHNSON VISION CARE, INC., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>SEAN D. REYES, in his Official Capacity as Attorney General of Utah,<br><br>Defendant. | **COMPLAINT**<br><br>Case No. 2:15-cv-00257-CW<br><br>Judge Clark Waddoups |

Plaintiff Johnson & Johnson Vision Care, Inc. ("JJVCI"), by its undersigned counsel, hereby brings this Complaint against Sean D. Reyes, in his official capacity as the Attorney General of Utah, and alleges as follows:

## INTRODUCTION

1. This is an action for declaratory and injunctive relief challenging the validity of Utah Code Section 58-16a-905.1 ("Section 905.1"), which is scheduled to take effect on May 12, 2015.

2. A product of aggressive lobbying by in-State commercial interests, Section 905.1 seeks to regulate the nationwide contact lens market.

3. In doing so, the statute violates the Commerce Clause of the United States Constitution in three distinct ways. First, Section 905.1 attempts to regulate the price at which contact lenses are sold to consumers in all 50 States. Second, it seeks to regulate commercial transactions that occur wholly outside the State of Utah between out-of-State manufacturers, like JJVCI, and out-of-State retailers and distributors. Third, Section 905.1 directly regulates interstate commerce by requiring out-of-State manufacturers to do business with in-State retailers and distributors even when those retailers and distributors violate the manufacturers' pricing policies. For each of these reasons, Section 905.1 is *per se* unconstitutional. In addition, the statute imposes a burden on interstate commerce that is clearly excessive in relation to the putative local benefits.

4. JJVCI accordingly seeks a declaration that Section 905.1 violates the Commerce Clause of the United States Constitution and an injunction barring enforcement of the law.

## PARTIES

5. Plaintiff JJVCI is a wholly-owned subsidiary of Johnson & Johnson, a New Jersey corporation that is a leading manufacturer of medical devices and pharmaceutical and consumer packaged goods, including contact lenses. JJVCI is a Florida corporation with its principal place of business in Jacksonville, Florida. JJVCI manufactures and sells ACUVUE® contact lenses. ACUVUE® is the leading brand by market share in the United States.

6. Defendant Sean D. Reyes is sued in his official capacity as the Utah Attorney General. Section 905.1 authorizes the Utah Attorney General to "bring a civil action or seek an injunction or civil penalty against any person who" violates the pricing policy restrictions set out in that law.

## JURISDICTION AND VENUE

7. JJVCI brings this action pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3.

8. This Court has subject matter jurisdiction because JJVCI's claims arise under the Constitution and laws of the United States. 28 U.S.C. §§ 1331, 1343.

9. The relief requested is authorized by 42 U.S.C. § 1983 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

10. Venue is proper under 28 U.S.C. § 1391(b) because Attorney General Reyes is a resident of Utah and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## GENERAL ALLEGATIONS

*The Interstate Contact Lens Market.*

11. Over the past several decades, contact lenses have become a ubiquitous part of American life. They are used to treat a variety of vision impairments that affect millions of Americans, including near- and far-sightedness and astigmatism.

12. Contact lenses are classified as medical devices by the Food and Drug Administration, and their manufacture and distribution is regulated at the federal level under the Food Drug and Cosmetic Act.

13. Likewise, contact lenses are treated by State regulatory systems, including Utah's, as devices to be dispensed only pursuant to a prescription issued by a licensed eye care professional.

14. Once a customer has obtained a contact lens prescription, that prescription may be filled either by the eye care professional or by another retail seller of contact lenses.

15. ACUVUE® lenses are manufactured at JJVCI facilities in Jacksonville, Florida and Limerick, Ireland. Most of the ACUVUE® lenses sold in the United States are manufactured in Florida. No lenses are manufactured in Utah.

3

16. In the United States, JJVCI sells its ACUVUE® lenses through approximately 35,000 retailers and distributors, who in turn sell the lenses (directly or indirectly) to individual prescription holders.

17. For example, JJVCI sells approximately 32% of its contact lenses directly to national retail chains, such as Wal-Mart and Walgreens. These national retail chains in turn sell ACUVUE® lenses to customers at store locations across the country.

18. JJVCI sells approximately 55% of its contact lenses through independent eye care professionals who are not associated with any retail chain. Sales to these independent eye care professionals often take place indirectly. For example, JJVCI contact lenses may be sold to a distributor, such as ABB Optical Group, an unaffiliated Florida corporation headquartered in Coral Spring, Florida, which would then sell lenses on to eye care professionals.

19. JJVCI sells approximately 13% of its contact lenses through Internet-based retailers such as 1-800-CONTACTS. Upon information and belief, these Internet-based retailers sell ACUVUE® lenses to customers in all 50 States.

20. At the wholesale level, roughly 90% of JJVCI sales in 2014 were made to distributors and retailers outside of Utah.

21. Approximately 99% of the wholesale purchases in Utah were made by 1-800-CONTACTS. The remaining 1% were made by 76 separate Utah independent eye care professionals.

22. Roughly 99% of the ACUVUE® sales by 1-800-CONTACTS were made to non-Utah customers. Less than 1% of 1-800-CONTACTS sales, by revenue, were made to Utah customers.

23. At the retail level, ACUVUE® contact lenses are purchased by consumers in all 50 States. More than 99% of those nationwide retail purchases take place outside of Utah.

### *JJVCI's Unilateral Pricing Policy (UPP).*

24.     Historically, retail sales of ACUVUE® and other contact lenses reflected a two-step pricing system.  Customers would pay one price at the register, but could in certain circumstances redeem manufacturer's rebates to obtain an additional discount.

25.     During the summer of 2014, JJVCI introduced its nationwide Unilateral Pricing Policy ("UPP") on several of its most widely prescribed ACUVUE® brands.

26.     The UPP requires retailers to advertise and sell JJVCI contact lenses for no less than a minimum price set out in a schedule published by JJVCI.

27.     Customers and eye care professionals had found it difficult and time-consuming to monitor and match the prices offered by retailers.  They also found that conversations about pricing distracted from examinations that should have been focused on vision needs.

28.     UPP eliminated the need for customers and eye care professionals to engage in complex pricing discussions.  The UPP-based pricing model assures consumers that if their eye-care professional is charging the minimum price, there is no need to shop around for a better bargain.  JJVCI enforces this pricing policy by refusing to make future sales to retailers who choose not to comply with the pricing standards set out in the UPP.

29.     In implementing the UPP, JJVCI took three steps, which, in the aggregate, lowered prices for retailers and distributors as well as consumers.  First, J&J reduced wholesale prices.  As a result, retailers and distributors now pay less for ACUVUE® lenses than they did before the UPP was implemented.

30.     Second, the UPP established minimum retail prices that are *lower* than the pre-UPP national average sales price.

31.     Third, JJVCI increased package sizes on several brands.  This enabled J&J to reduce per-unit prices to consumers.

32. Fourth, JJVCI terminated its manufacturer's rebate program, which had provided rebates to consumers who bought an annual supply of contact lenses. JJVCI found that the rebate program failed to yield fully discounted prices. Roughly 80% of ACUVUE® wearers generally would buy less than the annual quantity of contact lenses necessary to be eligible for the manufacturer's rebate. In addition, experience showed that only about 30% of discount-eligible ACUVUE® purchasers would actually follow through with the process of completing and mailing rebate forms. Moreover, even those customers that did achieve eligibility for discounts and completed the rebate process were required to wait roughly 6-8 weeks to receive any rebate payment. JJVCI data indicates that only 6-8% of all ACUVUE® consumers actually redeemed manufacturer's rebates in a manner that allowed them to receive the best available prices.

33. The net effect of these changes is that a significant majority of ACUVUE® consumers now pay less for contact lenses than before the UPP was implemented. Retailers and distributors pay less as well.

### *Section 905.1.*

34. Despite these benefits, Utah enacted Section 905.1 on March 27, 2015, in order to terminate JJVCI's UPP. The law is scheduled to go into effect on May 12, 2015.

35. Several Utah legislators stated publicly, prior to enactment, that Section 905.1 was designed to aid 1-800-CONTACTS, a Utah-based business that has opposed the UPP.

36. Section 905.1 provides that a "contact lens manufacturer or a contact lens distributor may not . . . take any action, by agreement, unilaterally, or otherwise, that has the effect of fixing or otherwise controlling the price that a contact lens retailer charges or advertises for contact lenses." It also prohibits such a manufacturer or distributor from "discriminat[ing]

against a contact lens retailer based on whether the contact lens retailer . . . sells or advertises contact lenses for a particular price."

37. Section 905.1 authorizes Utah's Attorney General to bring a civil action or seek an injunction and civil penalty against anyone who violates these provisions.

38. The practical effect of these provisions is to *force* manufacturers to do business with retailers who choose not to comply with a manufacturer's UPP.  Presumably, a manufacturer can no longer terminate a retailer who refuses to abide by the nationwide UPP.  Such termination would apparently constitute "discriminat[ion]," and subject the manufacturer to civil penalties.

39. On its face, Section 905.1 is not limited to wholesale or retail transactions that occur within Utah.  Left intact, the statue would have extraordinary scope, far transcending Utah's borders.  As explained, roughly 90% of JJVCI's wholesale transactions occur outside of Utah and over 99% of retail purchases take place outside Utah.

***The Commerce Clause of the United States Constitution.***

40. The Commerce Clause grants to Congress, not the States, the power "to regulate Commerce . . . among the several States,"  U.S. Const. Art. I, § 8, cl. 3.

41. The Commerce Clause thus denies to every State, including Utah, any power to project its legislation in another State in order to regulate commerce outside its borders.

42. The Commerce Clause further dictates that no State may force an out-of-State merchant to seek regulatory approval in one State before undertaking a transaction in another.

43. Under the Commerce Clause, a state statute is invalid if it has the practical effect of regulating commerce occurring entirely outside the boundaries of the State in question, or if it discriminates against interstate commerce.

7

44. Likewise, a state statute cannot stand if it places a burden on interstate commerce that is clearly excessive in relation to the putative local benefits.

45. Section 905.1 violates the Commerce Clause in three primary respects.

46. First, Section 905.1 directly regulates the price at which contact lenses are sold to consumers in all 50 States by prohibiting "any action" by a manufacturer that "has the effect of fixing or otherwise controlling the price that a contact lens retailer charges or advertises for contact lenses."

47. Second, Section 905.1 directly regulates transactions between *out-of-State* manufacturers, like JJVCI, and their *out-of-State* retailers and distributors. It does so by requiring out-of-State manufacturers to do business with out-of-State retailers and distributors even when those retailers and distributors violate the manufacturers' pricing policies.

48. Third, Section 905.1 directly regulates interstate commerce by mandating interstate commerce between out-of-State manufacturers and *in-State* retailers and distributors, and by discriminating in this respect in favor of in-State interests.

49. Further, in each of these respects, Section 905.1 puts a burden on interstate commerce that is clearly excessive in relation to any putative local benefit.

**FIRST CAUSE OF ACTON**
**(For Declaratory and Injunctive Relief Based Upon the Dormant Commerce Clause)**

50. JJVCI incorporates by reference all allegations contained in paragraphs 1 through 48 of this Complaint.

51. Section 905.1 is a statute officially adopted and enacted into law by officials of the State of Utah acting under color of authority.

52. Section 905.1 provides that a "contact lens manufacturer or a contact lens distributor may not . . . take any action, by agreement, unilaterally, or otherwise, that has the

effect of fixing or otherwise controlling the price that a contact lens retailer charges or advertises for contact lenses." It also prohibits such a manufacturer or distributor from "discriminat[ing] against a contact lens retailer based on whether the contact lens retailer . . . sells or advertises contact lenses for a particular price."

53. Section 905.1 is invalid because, in practical effect, it directly regulates interstate commerce and discriminates against interstate commerce by favoring in-State economic interests over out-of-State interests.

54. Section 905.1 invalidly projects Utah's legislation into all other States by prohibiting the use of manufacturer retail pricing policies, and thus by regulating the prices paid for contact lenses in other States.

55. Section 905.1 invalidly projects Utah's legislation into all other States by prohibiting out-of-State contact lens manufacturers from terminating out-of-State retailers, and thus by regulating transactions between manufacturers and retailers that occur wholly outside of Utah.

56. Section 905.1 invalidly regulates interstate commerce by prohibiting out-of-State manufacturers from terminating in-State retailers, and thus by effectively mandating interstate transactions and discriminating in favor of in-State interests.

57. Section 905.1 unlawfully imposes a burden on interstate commerce that is clearly excessive in relation to the putative local benefits.

**SECOND CAUSE OF ACTION**
**(For Declaratory Relief Concerning the Geographic Scope of Section 905.1)**

58. JJVCI incorporates by reference all allegations contained in paragraphs 1 through 56 of this Complaint.

59. The Courts of Utah recognize that Utah laws are presumed to have effect only within the borders of Utah.

60. The text of Section 905.1 does not expressly state whether Section 905.1 is intended to regulate only transactions that occur in Utah, or whether it is also intended to reach transactions that occur in other States.

61. Construing Section 905.1 to apply to transactions that occur in other States would compound the constitutional defects of the statute and expand its unlawful impact on JJVCI's nationwide policies and practices.

62. The Court should declare that Section 905.1 applies only to transactions that occur wholly within Utah and has no force or effect as to transactions in other States.

## RELIEF REQUESTED

WHEREFORE, JJVCI respectfully requests that this Court:

(a) Declare that Section 905.1 is unconstitutional, either facially or as-applied to JJVCI;

(b) Declare that Section 905.1 applies only to transactions that occur wholly within Utah;

(c) Award JJVCI its attorney's fees and costs for prosecuting this action; and

(d) Grant any other relief that is proper and just.

Dated:   April 14, 2015                         Respectfully submitted,

STOEL RIVES LLP
SIDLEY AUSTIN LLP


By: /s/ *Kenneth B. Black*
         Kenneth B. Black

Attorneys for Johnson & Johnson Vision Care, Inc.